1
2
3
4
5
6
7



I HEREBY CERTIFY THAT THIS DOCUMENT WAS SERVED BY
FIRST CLASS MAIL, POSTAGE PREPAID, TO ~~ALL COUNSEL~~ Plaintiff
(OR PARTIES) AT THEIR RESPECTIVE MOST RECENT ADDRESS OF
RECORD IN THIS ACTION ON THIS DATE.

DATED: 12/9/2010

DEPUTY CLERK

*along w/a Civil Rights Packet*

FILED
CLERK, U.S.D.C. SOUTHERN DIVISION

DEC - 9 2010

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

8
9
10

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

11  OTIS TELBERT BERTHEY, JR.,                  ) Case No. EDCV 10-1462-DDP (RNB)
12
13                        Plaintiff,            ) ORDER DISMISSING FIRST
                                                ) AMENDED COMPLAINT WITH
14            vs.                               ) LEAVE TO AMEND
15  GARY SANDOR, Warden, et al.,                )
16                        Defendants.           )
    _____ )

17      Plaintiff, a California state prisoner presently incarcerated at the California
18  Rehabilitation Center ("CRC"), in Norco, California, filed a pro se civil rights action
19  herein pursuant to 42 U.S.C. § 1983 on October 1, 2010, after being granted leave to
20  proceed in forma pauperis.
21      As best the Court could glean from the allegations of plaintiff's Complaint, the
22  gravamen of plaintiff's claims was that the sixteen named defendants raised false
23  accusations against him in a Rules Violation Report ("RVR") and unlawfully placed
24  him in detention.  Plaintiff also purported to allege that Officers Saavedra, Whipple,
25  and Green created a "dangerous physical condition" for plaintiff by indicating to
26  other inmates that plaintiff was a "snitch."  Further, plaintiff alleged that he was
27  denied his "right to grievance."  Plaintiff purported to be seeking unspecified
28  injunctive relief as well as damages.

1

1    In accordance with the provisions of the "Prison Litigation Reform Act of
2  1995" ("PLRA"), the Court screened the Complaint prior to ordering service, for
3  purposes of determining whether the action was frivolous or malicious; or failed to
4  state a claim on which relief may be granted; or sought monetary relief against a
5  defendant who is immune from such relief. See 28 U.S.C. §§ 1915(e)(2), 1915A(b);
6  42 U.S.C. § 1997e(c)(1).  After careful review and consideration of the allegations
7  of the Complaint under the relevant standards, the Court found that its allegations
8  failed to contain a short and plain statement of plaintiff's claims, did not give each
9  defendant fair notice of plaintiff's claims or the grounds upon which they rested, and
10  were insufficient to state any federal civil rights claim on which relief might be
11  granted against any named defendant. Accordingly, on October 28, 2010, the Court
12  issued an Order Dismissing Complaint with Leave to Amend. If plaintiff still desired
13  to pursue this action, he was ordered to file a First Amended Complaint within 30
14  days, remedying the deficiencies discussed in the Court's Order.

15    On November 18, 2010, plaintiff filed a First Amended Complaint ("FAC")
16  which names essentially the same 16 defendants plaintiff named in the Complaint,
17  although plaintiff now names each individual defendant in his or her official capacity
18  only.  Plaintiff also names as a defendant the California Department of Corrections
19  and Rehabilitation ("CDCR"). (See FAC at 5-16.) Plaintiff now purports to state
20  only one claim, purportedly arising under the First Amendment, the Due Process
21  Clause of the Fourteenth Amendment, and the Cruel and Unusual Punishment Clause
22  of the Eighth Amendment.  (See FAC at 16-17.)  Plaintiff purports to seek
23  compensatory and punitive damages as well as injunctive relief that ambiguously
24  seeks to "correct[] the standards the employees of the California Rehabilitation Center
25  can used [sic] the prestige of the department and the influence used upon the inmates
26  for the private advantage of another." (See FAC at 27-28.)

27    Once again, in accordance with the provisions of the PLRA, the Court has
28  screened the FAC prior to ordering service for purposes of determining whether the

2

1    action is frivolous or malicious; or fails to state a claim on which relief may be
2    granted; or seeks monetary relief against a defendant who is immune from such relief.
3        The Court's screening of the FAC under the foregoing statutes is governed by
4    the following standards.  A complaint may be dismissed as a matter of law for failure
5    to state a claim for two reasons:   (1) lack of a cognizable legal theory; or (2)
6    insufficient facts under a cognizable legal theory.  See Balistreri v. Pacifica Police
7    Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  In determining whether the FAC states a
8    claim on which relief may be granted, its allegations of material fact must be taken
9    as true and construed in the light most favorable to plaintiff.  See Love v. United
10   States, 915 F.2d 1242, 1245 (9th Cir. 1989).  Further, since plaintiff is appearing pro
11   se, the Court must construe the allegations of the FAC liberally and must afford
12   plaintiff the benefit of any doubt.  See Karim-Panahi v. Los Angeles Police Dep't,
13   839 F.2d 621, 623 (9th Cir. 1988).   However, "the liberal pleading standard …
14   applies only to a plaintiff's factual allegations."  Neitze v. Williams, 490 U.S. 319,
15   330 n.9, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989).  "[A] liberal interpretation of a
16   civil rights complaint may not supply essential elements of the claim that were not
17   initially pled."  Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir.
18   1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)).
19   Moreover, with respect to plaintiff's pleading burden, the Supreme Court has held
20   that "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief'
21   requires more than labels and conclusions, and a formulaic recitation of the elements
22   of a cause of action will not do. . . .  Factual allegations must be enough to raise a
23   right to relief above the speculative level . . . on the assumption that all the allegations
24   in the complaint are true (even if doubtful in fact)."  See Bell Atlantic Corp. v.
25   Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (internal
26   citations omitted, alteration in original); see also Ashcroft v. Iqbal, - U.S. -, 129 S. Ct.
27   1937, 1949, 173 L. Ed. 2d 868 (2009) (To avoid dismissal for failure to state a claim,
28   "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim

1    to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff
2    pleads factual content that allows the court to draw the reasonable inference that the
3    defendant is liable for the misconduct alleged." (internal citation omitted)).

4        After careful review and consideration of the allegations of the FAC under the
5    relevant standards, the Court finds, for the reasons discussed hereafter, that its
6    allegations still fail to contain a short and plain statement of plaintiff's claims, do not
7    give each defendant fair notice of what plaintiff's claims are or the grounds upon
8    which they rest, and are insufficient to state any federal civil rights claim on which
9    relief may be granted against any named defendant.

10

11                             **DISCUSSION**

12 **A.**     **The Eleventh Amendment bars plaintiff's claims against the CDCR and**
13          **still bars his claims for monetary damages against the individual**
14          **defendants in their official capacities.**

15        In Will v. Michigan Department of State Police, 491 U.S. 58, 64-66, 109 S. Ct.
16    2304, 105 L. Ed. 2d 45 (1989), the Supreme Court held that states, state agencies, and
17    state officials sued in their official capacities are not persons subject to civil rights
18    suits under 42 U.S.C. § 1983. The Supreme Court reasoned that a suit against a state
19    official in his or her official capacity is a suit against the official's office, and as such
20    is no different from a suit against the State itself, which would be barred by the
21    Eleventh Amendment. See id.; see also Romano v. Bible, 169 F.3d 1182, 1185 (9th
22    Cir.), cert. denied, 528 U.S. 816 (1999); Stivers v. Pierce, 71 F.3d 732, 749 (9th Cir.
23    1995). In addition, "the Eleventh Amendment bars actions against state officers sued
24    in their official capacities for past alleged misconduct involving a complainant's
25    federally protected rights, where the nature of the relief sought is retroactive, i.e.,
26    money damages." Bair v. Krug, 853 F.2d 672, 675 (9th Cir. 1988).

27        To overcome the Eleventh Amendment bar on federal jurisdiction over suits
28    by individuals against a State and its instrumentalities, either the State must have

consented to waive its sovereign immunity or Congress must have abrogated it; moreover, the State's consent or Congress' intent must be "unequivocally expressed." See Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 99-100, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984).  While California has consented to be sued in its own courts pursuant to the California Tort Claims Act, such consent does not constitute consent to suit in federal court.  See BV Engineering v. Univ. of Cal., Los Angeles, 858 F.2d 1394, 1396 (9th Cir. 1988), cert. denied, 489 U.S. 1090 (1989); see also Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 241, 105 S. Ct. 3142, 87 L. Ed. 2d 171 (1985) (holding that Art. III, § 5 of the California Constitution did not constitute a waiver of California's Eleventh Amendment immunity).  Moreover, Congress has not abrogated State sovereign immunity against suits under 42 U.S.C. § 1983.

Accordingly, the CDCR is immune from plaintiff's federal civil rights claims as a state agency.  See Pennhurst, 465 U.S. at 100 ("This jurisdictional bar applies regardless of the nature of the relief sought."); Alabama v. Pugh, 438 U.S. 781, 782, 98 S. Ct. 3057, 57 L. Ed. 2d 1114 (1978) (per curiam) (the Eleventh Amendment bars claim for injunctive relief against Alabama and its Board of Corrections).  Further, as the Court previously has admonished plaintiff, because all individual defendants are alleged to be prison officials or mental health professionals connected with the CRC, plaintiff's claims for monetary damages against all individual defendants named in their official capacities are barred.

**B.      Plaintiff's allegations still fail to comply with the pleading requirements of Federal Rule of Civil Procedure 8.**

As the Court previously has admonished plaintiff, pursuant to Fed. R. Civ. P. 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Further, Rule 8(d)(1) provides:  "Each allegation must be simple, concise, and direct."  As the Supreme Court has held, Rule 8(a) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief."

5

1   Twombly, 550 U.S. at 556. Although the Court must construe a pro se plaintiff's

2   pleadings liberally, plaintiff nonetheless must allege a minimum factual and legal

3   basis for each claim that is sufficient to give each defendant fair notice of what

4   plaintiff's claims are and the grounds upon which they rest. See, e.g., Brazil v.

5   United States Dep't of the Navy, 66 F.3d 193, 199 (9th Cir. 1995); McKeever v.

6   Block, 932 F.2d 795, 798 (9th Cir. 1991). If plaintiff fails to clearly and concisely

7   set forth allegations sufficient to provide defendants with notice of which defendant

8   is being sued on which theory and what relief is being sought against them, the

9   complaint fails to comply with Rule 8. See, e.g., McHenry v. Renne, 84 F.3d 1172,

10   1177-79 (9th Cir. 1996); Nevijel v. Northcoast Life Ins. Co., 651 F.2d 671, 674 (9th

11   Cir. 1981). Moreover, failure to comply with Rule 8(a) constitutes an independent

12   basis for dismissal of a complaint that applies even if the claims in a complaint are

13   not found to be wholly without merit. See McHenry, 84 F.3d at 1179; Nevijel, 651

14   F.2d at 673.

15       Here, plaintiff has replaced his rambling 23-page Complaint with an even more

16   incomprehensible 28-page FAC. The Court therefore finds that the FAC still does not

17   comply with Rule 8 because it does not contain a "short and plain statement" of

18   plaintiff's claims showing that he is entitled to relief.

19       In addition, the Court finds that the FAC still does not comply with Rule 8

20   because its allegations are insufficient to meet plaintiff's threshold requirement of

21   providing each defendant with notice of their allegedly wrongful acts. Although the

22   Court previously advised plaintiff that he must clearly and concisely set forth the

23   legal and factual basis for each of his claims rather than jumble them together into

24   two "counts," plaintiff's FAC now purports to state only one "claim," arising under

25   multiple theories, against unspecified defendants. (See FAC at 16.) Plaintiff's

26   factual allegations involve a miscellany of incidents that took place over nearly a

27   year, seemingly unrelated encounters with various prison officials, and alleged

28   violations of civil rights that appear to the Court to relate to numerous claims for

1  relief.  Further, many of the factual allegations do not appear to be relevant to any
2  potential federal civil rights claim.  Accordingly, it is entirely unclear to the Court the
3  number or nature of the federal civil rights claims that plaintiff is purporting to raise
4  in the FAC.

5      Moreover, plaintiff sets forth a list of defendants including fifteen prison
6  officials and the CDCR.  (See FAC at 5-16.)  However, plaintiff fails to name any
7  defendant in connection with any specific claim.  Although plaintiff now has added
8  a paragraph of information following the name of each defendant, plaintiff does not
9  link these narratives with any specific claim or claims.  Further, it is unclear to the
10  Court how the information provided for each defendant pertains to any potential
11  federal civil rights claim or claims.  For example, defendant Dr. M. Nichols, a
12  psychiatry specialist at the CRC, is alleged to have acted (see FAC at 10):

13      "to prevent a [sic] effective communication means provided to plaintiff
14      that view an appeal to a [sic] imminent danger of serious physical harm
15      to a [sic] inmate by a Corrections staff (C. Saavedra, Correctional
16      Officer) CCR section 3084.7, and how that determination of whether
17      plaintiff appeared to understand the basis for that determination against
18      a Corrections staff includes, but not limit [sic] to a following: the doctor
19      represents the CRC from plaintiff's claim of a substantial danger of
20      physical harm to plaintiff."

21

22      Because the Court is utterly unable to comprehend the basis of any purported
23  federal civil rights claim against any specific defendant, it is entirely unclear to the
24  Court which of plaintiff's factual or legal allegations relate to what federal civil rights
25  claim or claims against which defendant.
26      Thus, even construing plaintiff's allegations liberally and affording plaintiff the
27  benefit of any doubt, the Court finds that plaintiff's FAC fails to allege sufficient
28  "factual content that allows the [C]ourt to draw the reasonable inference that the

1   defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949.

2

3   **C.     To the extent that plaintiff's claim(s) appear to implicate the duration of**

4   **his confinement, they cannot be maintained in a § 1983 action.**

5   As the Court previously advised plaintiff, a petition for habeas corpus is a

6   prisoner's sole judicial remedy when attacking "the validity of the fact or length of

7   … confinement." Preiser v. Rodriguez, 411 U.S. 475, 489-90, 93 S. Ct. 1827, 36 L.

8   Ed. 2d 439 (1973); Young v. Kenny, 907 F.2d 874, 875 (9th Cir. 1990), cert. denied,

9   498 U.S. 1126 (1991).  Further, a prisoner's challenge to disciplinary actions that

10  necessarily implicate the length of his or her confinement must also be brought in a

11  petition for habeas corpus. See Edwards v. Balisok, 520 U.S. 641, 648, 117 S. Ct.

12  1584, 137 L. Ed. 2d 906 (1997) (barring § 1983 challenge to prison disciplinary

13  hearing because success on the claim would result in automatic reversal of a

14  disciplinary sanction); Wolff v. McDonnell, 418 U.S. 539, 554-55, 94 S. Ct. 2963, 41

15  L. Ed. 2d 935 (1974) (holding that prisoners could not use § 1983 to obtain

16  restoration of good-time credits).

17  Here, it appears to the Court that plaintiff is alleging that he received one or

18  more RVRs or other disciplinary actions that were based on "falsified government

19  documents" and information that was "falsely made" after Officer Saavedra "coerced

20  other inmates to take items from supplies plaintiff was assigned as the facility's

21  supply clerk."  Plaintiff also alleges that he was denied a witness in at least one

22  hearing. (See, e.g., FAC at 14, 18-20.) Further, the exhibits that plaintiff attached to

23  his FAC, and which are incorporated therein, include an RVR from December 2009

24  (see FAC, Exh. A) in which plaintiff was found guilty of "disrespect with potential

25  for violence/disruption" and assessed, inter alia, "thirty (30) days forfeiture of credit."

26  See Hal Roach Studios v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir.

27  1989) (documents attached to a complaint are incorporated therein by reference).

28  As the Court previously advised plaintiff, to the extent that plaintiff may be

8

1  purporting to have a RVR removed from his file or reversed in order to have the lost

2  good-time or work-time credit restored,[1] such relief only is available in a habeas

3  corpus action if plaintiff currently is serving a determinate sentence. See Ramirez v.

4  Galaza, 334 F.3d 850, 856 (9th Cir. 2003), cert. denied, 541 U.S. 1063 (2004).

5

6  **D.   To the extent that plaintiff is seeking monetary damages for an allegedly**

7  **unlawful disciplinary action(s), his claim(s) are barred by the favorable**

8  **termination rule of Heck v. Humphrey.**

9      Under Heck v. Humphrey, 512 U.S. 477, 486-87, 114 S. Ct. 2364, 129 L. Ed.

10  2d 383 (1994), if a judgment in favor of a plaintiff on a civil rights action necessarily

11  will imply the invalidity of his or her conviction or sentence, the complaint must be

12  dismissed unless the plaintiff can demonstrate that the conviction or sentence already

13  has been invalidated. Id. Thus:

14      "[A] state prisoner's § 1983 action is barred (absent prior invalidation)

15      – no matter the relief sought (damages or equitable relief), no matter the

16      target of the prisoner's suit (state conduct leading to conviction or

17      internal prison proceedings) – **if** success in that action would necessarily

18      demonstrate the invalidity of confinement or its duration." Wilkinson

19      v. Dotson, 544 U.S. 74, 125 S. Ct. 1242, 1248, 161 L. Ed. 2d 253 (2005)

20

21  _____

22      [1]   Under state law, most inmates in California are eligible for a reduction
    in their sentence based on both good-time and work-time credits. See Cal. Penal

23  Code § 2933. Accordingly, plaintiff's challenge to the loss of work-time credits is
    in essence a challenge to the duration of his sentence. See, e.g., Perez v. Beltran,

24  2010 WL 760395, *5 (C.D. Cal. Feb. 25, 2010) (dismissing as noncognizable under

25  § 1983 a claim challenging the procedures used during the plaintiff's disciplinary
    hearing, which resulted in a loss of good-time credits); Quilalang v. Hartley, 2009

26  WL 798998, *1 (E.D. Cal. March 24, 2009) (dismissing as noncognizable under §

27  1983 a claim challenging defendants' refusal to apply work-time credits toward an

28  earlier release date).

1    (emphasis in original).

2

3        In Balisok, the Supreme Court extended the favorable termination rule of Heck

4    to prison disciplinary actions that implicate a prisoner's term of confinement. In that

5    case, the prisoner was challenging the procedures used in a disciplinary hearing for

6    rules violations that resulted, inter alia, in the loss of 30 days of good-time credit. The

7    plaintiff in Balisok was claiming that the hearing officer had refused to ask specified

8    questions of requested witnesses and that he had been denied the right to present

9    evidence in his own defense.   The Supreme Court held that Balisok could not

10   circumvent the limitation on § 1983 suits imposed by Heck because the alleged due

11   process defects, if established, "necessarily imply the invalidity of the deprivation of

12   his good-time credits."   See Balisok, 520 U.S. at 646.   Since that result would

13   decrease the length of the prisoner's confinement, the Supreme Court concluded that

14   his claims were not cognizable under § 1983 until his disciplinary conviction had

15   been invalidated. See id. at 648-49.

16       Here, it appears to the Court that plaintiff is purporting to allege that he was

17   subjected to a disciplinary proceeding or proceedings that was based on falsified

18   documents or false information, and that he was subjected to at least one hearing in

19   which proper procedures were not followed. To the extent that plaintiff is serving a

20   determinate sentence and purporting to seek damages for his loss of work-time or

21   good-time credit, as the Court previously advised plaintiff, any such claim for

22   damages is barred by the favorable termination rule of Heck and Balisok because a

23   judgment in favor of plaintiff on his claim necessarily will imply the invalidity of the

24   disciplinary action, and plaintiff has not demonstrated that the disciplinary action has

25   been "reversed on direct appeal, expunged by executive order, declared invalid by a

26   state tribunal authorized to make such determination, or called into question by a

27   federal court's issuance of a writ of habeas corpus." See, e.g., Cox v. Clark, 321 Fed.

28   Appx. 673, 676 (9th Cir. 2009) (affirming dismissal of due process claim pursuant to

1  Balisok to the extent that plaintiff sought restoration of good-time credits and the
2  reversal of a disciplinary decision) (now citable for its persuasive value pursuant to
3  Ninth Circuit Rule 36-3); McCoy v. Spidle, 2009 WL 1287872, *7-*8 (E.D. Cal. May
4  6, 2009) ("A challenge under section 1983, seeking only damages and declaratory
5  relief for procedural due process violations is also barred if the nature of the
6  challenge would necessarily imply the invalidity of the deprivation of good-time
7  credits.").

8

9   E.     **Plaintiff's allegations in any event are insufficient to state a federal civil**
10         **rights claim based on the failure of any named defendant to follow state**
11         **law or prison policies in connection with any disciplinary proceedings.**

12         To the extent that plaintiff may be purporting to state a claim that, if successful,
13  would **not** inevitably implicate the duration of his confinement, he may bring a civil
14  rights claim. See Wilkinson, 125 S. Ct. at 1248 (to the extent plaintiff is challenging
15  a prison or parole procedure that would not "necessarily spell speedier release," such
16  claim may be brought in a civil rights action); Osborne v. District Attorney's Office,
17  423 F.3d 1050, 1055 (9th Cir. 2005) (interpreting Wilkinson to read "necessarily" as
18  "inevitably" and confirming that habeas and § 1983 "are not always mutually
19  exclusive").  Here, however, based on plaintiff's allegations and the documents
20  attached to his FAC and referenced therein, it appears to the Court that plaintiff was
21  found guilty of disrespect to a prison official.  According to the record of this RVR,
22  plaintiff admitted at the RVR hearing that he "said what [he] said, but [he] didn't
23  direct it towards anyone." (FAC, Exh. A.) Further, in his FAC, plaintiff admits that
24  he engaged in a "very heated incident" with Officer Saavedra. (FAC at 17.)  In
25  addition, plaintiff admits that, following an incident with Officer Green, plaintiff
26  "gets upset while leaving the present [sic] of Officer Green on April 29, 2010, and
27  make [sic] an expression for which plaintiff received" another RVR. (FAC at 19,
28  Exh. G.)  Plaintiff's Exh. G is a RVR from May 2010 in which he was found guilty

of "disrespect toward staff." At that hearing, plaintiff admitted that he had had a "bad day." (FAC, Exh. G.) Accordingly, to the extent that plaintiff may be purporting to raise one or more civil rights claims based on his disciplinary hearings, the reversal of which would not "necessarily spell speedier release," plaintiff's allegations still fail to raise an inference of any plausible civil rights claim on which relief may be granted.

Moreover, to the extent that plaintiff may be alleging that any named defendant failed to comply with state law or to follow proper prison protocol or procedures in connection with the disciplinary hearings, as the Court previously advised him, such allegations are insufficient to state a federal civil rights claim. See, e.g., Buckley v. Gomez, 36 F. Supp. 2d 1216, 1222 (S.D. Cal. 1997) (prisoners have no constitutional right to be free from wrongfully issued disciplinary reports), aff'd without opinion, 168 F.3d 498 (9th Cir. 1999); see also Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989) (prisoner's claims based on allegedly false charges do not state a constitutional claim).  The mere failure of prison officials to follow state law or prison policies does not rise to the level of a federal civil rights violation.

**F.**    **Plaintiff's allegations still are insufficient to state a federal civil rights claim pursuant to the First Amendment against any named defendant.**

To the extent that plaintiff may be purporting to raise a claim pursuant to the First Amendment for retaliation, his allegations are insufficient to state a claim against any named defendant.

1.    Plaintiff cannot state a federal civil rights claim based on alleged interference with or failure to process plaintiff's grievances.

Plaintiff alleges that he was denied a "proper administrative process to grievances," that his grievances were "delayed or obstructed," and that prison officials failed to process or unfairly returned his numerous grievances. (See, e.g.,

1  FAC at 21, 25-27.)

2          However, as the Court previously advised plaintiff, a prisoner has no
3  constitutional right to an effective grievance or appeal procedure, and the mere
4  participation of prison officials in plaintiff's administrative appeal process is an
5  insufficient basis on which to state a federal civil rights claim against such
6  defendants.  See Ramirez, 334 F.3d at 860 (holding that a prisoner has no
7  constitutional right to an effective grievance or appeal procedure); Mann v. Adams,
8  855 F.2d 639, 640 (9th Cir. 1988); see also George v. Smith, 507 F.3d 605, 609-10
9  (7th Cir. 2007) (holding that only persons who cause or participate in civil rights
10  violations can be held responsible and that "[r]uling against a prisoner on an
11  administrative complaint does not cause or contribute to the violation"); Shehee v.
12  Luttrell, 199 F.3d 295, 300 (6th Cir. 1999) (holding that prison officials whose only
13  roles involved the denial of the prisoner's administrative grievances cannot be held
14  liable under § 1983, cert. denied, 530 U.S. 1264 (2000); Buckley v. Barlow, 997
15  F.2d 494, 495 (8th Cir. 1993) ("[A prison] grievance procedure is a procedural right
16  only, it does not confer any substantive right upon the inmates."); Wright v.
17  Shapirshteyn, 2009 WL 361951, *3 (E.D. Cal. Feb. 12, 2009) (noting that "where a
18  defendant's only involvement in the allegedly unconstitutional conduct is the denial
19  of administrative grievances, the failure to intervene on a prisoner's behalf to remedy
20  alleged unconstitutional behavior does not amount to active unconstitutional behavior
21  for purposes of § 1983"). Accordingly, plaintiff's allegations that various defendants
22  interfered with his administrative grievances still fail to state a federal civil rights
23  claim.

24

25          2.    Plaintiff's allegations are insufficient to state a claim for retaliation.

26          An action taken in retaliation for the exercise of a First Amendment right is
27  actionable under § 1983. See Hines v. Gomez, 108 F.3d 265, 267 (9th Cir. 1997);
28  Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995). Filing a grievance with prison

1    officials is protected activity under the First Amendment. See Hines, 108 F.3d at

2    267-68.  However, as the Court previously advised plaintiff, in order to support a

3    claim for retaliation, a plaintiff must show that: (1) his constitutionally protected

4    conduct was a substantial or motivating factor for the alleged retaliatory action (see

5    Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287, 97 S. Ct.

6    568, 50 L. Ed. 2d 471 (1977)); (2) the retaliatory action "did not advance legitimate

7    goals of the correctional institution or was not tailored narrowly enough to achieve

8    such goals" (Pratt, 65 F.3d at 806); and (3) the alleged retaliatory actions of

9    defendants caused plaintiff some injury (see Resnick v. Hayes, 213 F.3d 443, 449 (9th

10   Cir. 2000) (as amended)).

11        Here, plaintiff raises vague references to "retaliation" and "retaliatory

12   measure[s]," and alleges that false documents were placed in his "C-file" as a

13   "retaliatory measure by the CRC staff because plaintiff exercised his First

14   Amendment Rights against Officer Saavedra's desire of a want of chastity on

15   plaintiff." (See, e.g., FAC at 9, 13-14, 20.)  Plaintiff further alleges that Officers

16   Frigo and Demase "exercised a retaliatory measure for Officer Saavedra that do [sic]

17   placed plaintiff at a substantial risk of personal injury" from their "tampering with

18   plaintiff's C-file."   (FAC at 21.)   Plaintiff's confusing, vague, and conclusory

19   allegations, however, do not raise any inference that any constitutionally protected

20   conduct was the motivating factor for any specific retaliatory action.

21        Accordingly, even taking the allegations of the FAC as true and in the light

22   most favorable to plaintiff, plaintiff still has failed to allege sufficient facts from

23   which a reasonable inference could be drawn that any constitutionally protected

24   conduct was a substantial or motivating factor for any alleged retaliatory action by

25   any named defendant.  Put another way, any allegations to the effect that plaintiff's

26   constitutionally protected activity was a substantial or motivating factor for any

27   retaliatory action still do not rise "above the speculative level." See Twombly, 550

28   U.S. at 555; see also Iqbal, 129 S. Ct. at 1952 (plaintiff "would need to allege more

14

1  by way of factual content to 'nudg[e]' his claim of purposeful discrimination 'across

2  the line from conceivable to plausible'") (alteration in original, citing <u>Twombly</u>, 550

3  U.S. at 570).

4

5  **G.**   **<u>Plaintiff's allegations also still are insufficient to state a federal civil rights</u>**

6       **<u>claim against any named defendant pursuant to the Eighth Amendment.</u>**

7           To the extent that plaintiff is purporting to state a claim pursuant to the Eighth

8  Amendment based on the failure of prison officials to prevent harm from other

9  inmates (<u>see, e.g.</u>, FAC at 17), plaintiff's relevant factual allegations appear to include

10  the following:  that Officer Saavedra subjected plaintiff to a risk of personal injury

11  by "telling other inmate[s] ... that he 'snitching' [sic]" (<u>see id.</u> at 22); other inmates

12  "have been influenced into conspiring to harm plaintiff through plays [sic] in gang-

13  bangers by Officer Saavedra, Officer Whipple, and Officer Green telling or putting

14  the statement out that plaintiff was 'snitching'" (<u>see id.</u>); Officers Whipple and Green

15  "intentionally committed a wanton harm to plaintiff by openly telling the inmates ...

16  that plaintiff is not to be trusted" (<u>see id.</u> at 23); Officer Saavedra openly told other

17  inmates that plaintiff "'needs a friend's help,' and the inmates to which Officer

18  Saavedra made the statement reasonably understood the statement by Officer

19  Saavedra to mean that plaintiff was being to [sic] familiar or friendly with the

20  correction's staff and that's reasonably understood to mean plaintiff is a 'snitch,' so

21  to cause the wanton harm Officer Saavedra [sic] desire on plaintiff" (<u>see id.</u> at 23-24);

22  and "Officer Saavedra was soliciting the inmates for pay to harm or injury [sic]

23  plaintiff" when he referenced how much money the officer has (<u>see id.</u> at 27).

24           The Supreme Court has held that the Eighth Amendment guarantee against

25  cruel and unusual punishment obligates state prison officials to "'take reasonable

26  measures to guarantee the safety of the inmates,'" and that the foregoing obligation

27  encompasses the duty "'to protect prisoners from violence at the hands of other

28  prisoners.'"  <u>Farmer v. Brennan</u>, 511 U.S. 825, 832-33, 114 S. Ct. 1970, 128 L. Ed.

1   2d 811 (1994).  Thus, "[a] prison official's 'deliberate indifference' to a substantial

2   risk of serious harm to an inmate violates the Eighth Amendment." Id. at 828.

3          As the Court previously advised plaintiff, there are two requirements that must

4   be met to establish an Eighth Amendment violation based on the failure of a prison

5   official to prevent harm: (1) the deprivation alleged, objectively, must have been

6   "sufficiently serious, in that the inmate must show that he was incarcerated under

7   conditions posing a substantial risk of serious harm"; and (2) the prison official must

8   have had a "sufficiently culpable state of mind," namely, "deliberate indifference" to

9   the inmate's health or safety. See Farmer, 511 U.S. at 834; see also Wilson v. Seiter,

10  501 U.S. 294, 298-99, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991).

11         Here, plaintiff's allegations still are altogether insufficient to state a claim

12  against any defendant for the failure to protect plaintiff.  First, plaintiff does not

13  allege that any inmate threatened him or took any action against him in response to

14  the rather vague statements alleged to have been said by prison officials that would

15  give rise to any inference that, objectively, plaintiff was subjected to a substantial risk

16  of serious harm.  Further, plaintiff does not allege that any named defendant failed to

17  take an action that could have prevented any substantial risk of serious harm.  Finally,

18  plaintiff does not allege that any named defendant was subjectively aware of any

19  substantial risk of serious harm to plaintiff as a result of the alleged statements made

20  by prison officials. Cf. Valandingham v. Bojorquez, 866 F.2d 1135, 1136, 1138 (9th

21  Cir. 1989) (allegations were sufficient to state a claim where an inmate alleged that,

22  as a result of being labeled a "snitch," he had been subjected to "life-threatening

23  retaliation by fellow inmates").   A prison official does not violate the Eighth

24  Amendment by failing to avoid a substantial risk of serious harm that should have

25  been perceived but was not. See Farmer, 511 U.S. at 838.

26                          *****************

27         Plaintiff has failed to address the deficiencies discussed in the Court's prior

28  Order Dismissing Complaint with Leave to Amend.  Accordingly, the Court is

16

1 extremely dubious that plaintiff will be able to cure the deficiencies of the FAC.
2 Because plaintiff is proceeding pro se, however, the Court will afford plaintiff one
3 more opportunity to attempt to do so. See Noll v. Carlson, 809 F.2d 1446, 1448 (9th
4 Cir. 1987) (holding that a pro se litigant must be given leave to amend his complaint
5 unless it is absolutely clear that the deficiencies of the complaint cannot be cured by
6 amendment). The FAC therefore is dismissed with leave to amend. If plaintiff still
7 desires to pursue this action, he is ORDERED to file a Second Amended Complaint
8 within thirty (30) days of the service date of this Order, remedying the deficiencies
9 discussed above. The clerk is directed to send plaintiff a blank Central District civil
10 rights complaint form, which plaintiff is encouraged to utilize.

11    If plaintiff chooses to file a Second Amended Complaint, it should bear the
12 docket number assigned in this case; be labeled "Second Amended Complaint"; and
13 be complete in and of itself without reference to the original Complaint, the First
14 Amended Complaint, or any other pleading, attachment or document.

15    **Plaintiff is admonished that, if he fails to timely file a Second Amended**
16 **Complaint, the Court will recommend that the action be dismissed with**
17 **prejudice on the grounds set forth above and for failure to diligently prosecute,**
18 except to the extent that plaintiff may be seeking habeas relief, in which case the
19 Court will recommend that such claims be dismissed without prejudice to bringing
20 them in a petition for writ of habeas corpus.

22 DATED: December 8, 2010

24 ROBERT N. BLOCK
25 UNITED STATES MAGISTRATE JUDGE

17